UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                                    Case No. 3:23-cr-95-MCR-HTC

KEDARREL Z. HICKS

_____/

ORDER OF DETENTION

On December 18, 2023 the Court held a hearing on the government's oral motion for detention pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq*. Based upon the information contained in the pretrial services report, the evidence presented at the hearing, and the arguments of counsel, the Court finds Defendant shall be detained pending trial because there are no conditions or combination of conditions which will reasonably assure Defendant will not be a risk of flight or a danger to the safety of the community if released.

**I.    The Bail Reform Act**

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Under the Act, a court must order a defendant be detained if, after hearing, it finds that "no condition or combination of conditions will reasonably assure [the defendant's] appearance … and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1);

*United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an abiding conviction that the truth of its factual contentions are 'highly probable'"). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Chimurenga,* 760 F.2d at 405. Additionally, "danger to the community" does not refer to simply risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. 18 U.S.C. § 3142(e)(3). Those cases are

identified in 3142(e)(3) and include an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d 1354, 1355 (10th Cir. 1991). Also, even in a rebuttable presumption case the burden of persuasion remains with the government. *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with two felony drug offenses, each of which carry a minimum term of imprisonment of more than 10 years up to life imprisonment. "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress's belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community." *United States v. Kidd*, 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022). The judicial officer is given "substantial latitude in determining whether pretrial detention is appropriate." *King*, 849 F.2d at 487.

II.   Analysis

Considering the § 3142(g) factors, and for the reasons discussed below, the Court finds there are no conditions or combination of conditions that could be imposed which would reasonably assure the Court Defendant will not be a danger to the community or a risk of nonappearance.

A. <u>Nature and Circumstances of the Offense Charged.</u>

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  18 U.S.C. § 3142(g)(1).

Here, Defendant has been indicted by the grand jury of the following felony offenses:  Count 1 charges Defendant with conspiracy to distribute and possession with intent to distribute 400 grams or more of fentanyl and carries a penalty that includes a minimum mandatory term of 10 years' incarceration to a maximum term of life.  Count 3 charges Defendant with possession with intent to distribute 400 grams or more of fentanyl and carries the same penalties and fines as Count 1.[1]  It is an understatement to say the amount of drugs at issue is significant.

Based on the amount of the drugs at issue, the type of drug at issue, and the almost one year time over which the conspiracy is alleged to have occurred, the Court finds the nature of the offense weighs in favor of detention.  The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population."  *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989).  Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part).

---

[1] Defendant is also charged with conspiracy to use a communication facility in the furtherance of a felony (count 4).

3:23-cr-95-MCR-HTC

A "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting).

Notably, according to the Centers for Disease Control and Prevention, fentanyl is up to 50 times stronger than heroin and 100 times stronger than morphine. https://www.cdc.gov/stopoverdose/fentanyl/index.html; *United States v. Brown*, 538 F. Supp. 3d 154, 170 (D.C. 2021) (Lamberth, J.) ("Fentanyl, a synthetic opioid, is 50 to 100 times more potent than morphine and 50 times more potent than heroin ... Given that those who use fentanyl ... risk serious bodily injury or death, the danger posed to the [community] by [the defendant's] pre-trial release would be great." (internal quotations omitted)). It is a major contributor to fatal and nonfatal overdoses in the United States. https://www.cdc.gov/stopoverdose/fentanyl/index.html. The Court finds the nature and circumstances of the offenses charged weigh in favor of detention.

B. <u>Weight of the Evidence</u>.

This factor requires the district court to consider evidence proffered by the government which it intends to use at Defendant's trial. In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x

822, 830 (11th Cir. 2006). "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk defendant will flee to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against Defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

At the detention hearing, the government proffered that law enforcement began an investigation into suspected drug activities of co-defendant, L.

Chamberlain, in December 2022. Their investigation led them to Defendant, who law enforcement believes to be Chamberlain's right-hand man and distributor. The government admitted two exhibits, both of which are transcripts of recorded conversations between Chamberlain and Defendant. One call, which occurred on October 3, 2023, was interpreted by law enforcement as involving a discussion between the two men about how much people are enjoying the fentanyl that is being distributed. Gov't Exh. 1.

The other call, which occurred on October 25, 2023, just prior to a search warrant being executed on residences, was interpreted by law enforcement as involving a discussion between the two men about a potential search by law enforcement and the need to hide the drugs elsewhere. Gov't Exh. 2. According to law enforcement's interpretation, Defendant told Chamberlain during the call that Defendant's drugs were located "in the garage on top", "in that football helmet in that crown royal bag." *Id.* Those comments are significant because when the search warrant was executed, law enforcement found over 600 grams of fentanyl in a crown royal bag located inside a cooler in the woods – a cooler that law enforcement believes Chamberlain told his girlfriend, co-defendant C. Wilson, to purchase for the purpose of hiding the drugs. 200 additional grams of fentanyl were located inside the cooler.

The Court finds the evidence presented by the government weighs in favor of detention. The transcripts of the two calls shows the charges here are more than an "aberration or momentary lapse in judgment"; the calls show Defendant was "a fentanyl distributor with a long-term, [potentially] lethal operation." *See United States v. Coley*, 2023 WL 3271146, at * 4 (M.D. Ala. May 5, 2023) (affirming detention decision).

    C. <u>The History and Characteristics of the Defendant</u>.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g).

Defendant is 34 years old and has lived in Ft. Walton Beach his entire life. Currently, he lives with his grandmother, who is in her 90s. He is employed with his cousin's lawn care business, and is paid in cash. He also works part-time at Ruby Tuesday's, where he works about 16 hours a week and makes approximately $500 a month, net of taxes. He is engaged, but has no children. Defendant has used marijuana since the age of 14, and currently has a medical marijuana card. Defendant also contends that if released he would like to go back to barber school,

something he started more than a decade ago.  He also plans to return to living with his grandmother, but admitted during the hearing his grandmother does not keep up with his whereabouts and does not know of his drug activities.  Moreover, the government proffered Defendant was arrested on the indictment at his grandmother's residence, where he was sitting in a car with other known drug dealers.

Defendant's criminal history is relatively minimal and appears to have started just a few years ago.  In September 2020, Defendant pled no contest to possession of a controlled substance (2 Lortab tablets and marijuana) and paraphernalia (a scale) and although he was sentenced to 11 months and 29 days of probation, he violated the probation by engaging in a new law violation in February 2021 and testing positive for a controlled substance in August 2021.  These violations resulted in a termination and revocation of probation and a sentence of time served.  The "new law violation" were four charges for conspiracy to tamper with a witness, victim or information in a prosecution involving a life or capital felony.  According to a motion to dismiss filed by Defendant's counsel in the state court, those charges stem from a recorded prison telephone call between an inmate and female caller, during which law enforcement believed the inmate was telling the female caller to give Defendant instructions to coerce or mislead potential witnesses about an active homicide investigation.

Specifically, T. Gainer was charged with a homicide. During a recorded prison call, T. Gainer directed a third party, V. Battle, to contact Defendant and tell him to "lace up the boots" of two female witnesses who had information regarding the murder. Defendant told officers during a post-Miranda interview that he never spoke to V. Battle and did not know what "lacing the boots up meant." Defendant's Exh. 1. Defendant, however, admitted to telling Gainer he would "help out a friend." *Id*. The State nolle prossed those charges in October 2021.

Certainly, the Court recognizes Defendant's criminal history is not as serious or significant as ones the Court generally sees in these types of cases. The Court also recognizes none of the convictions involved violent crimes *per se*. The Court presumes that for that reason, the US Probation Office recommended release.

However, it cannot be disputed drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). "[A]n indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community." *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995). Indeed, studies "demonstrate a direct nexus between illegal drugs and crimes of violence." *Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring). Notably,

while Defendant was not prosecuted on the witness tampering charges, by his own admission he was friends with the person charged with the murder and agreed to help him out.  The government also proffered the homicide was related to drug activity.  Moreover, the conspiracy is alleged to have started in December 2022, and ran for almost a year.  "This evidentiary history of actual criminal conduct heightens risk, even when the documented history is clean."  *Coley*, 2023 WL 3271146, at * 4.

D. <u>The Nature and Seriousness of the Danger Posed by Release</u>.

The Court finds there is a serious danger that, if released, Defendant will return to drug trafficking to support himself, given his minimal reportable income. *See United States v.* Martin, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant—'pose a significant risk of pretrial recidivism.'").  The risk a defendant will continue to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted).  While Defendant argues there are conditions which can be imposed, such as GPS monitoring and home detention or incarceration, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his]

mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4 (M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined."). That probability is even higher here, where, as stated above, Defendant resides with his elderly grandmother and has been seen there with other known drug dealers. Moreover, as the government pointed out, Defendant lived with his grandmother during the entire period alleged in the conspiracy.

GPS monitoring would also not keep Defendant from fleeing to another district. Motivated persons are certainly known to cut off their monitors. *See United States v. Benevolence Int'l Found., Inc.*, 222 F. Supp. 2d 1005, 1007, (N.D. Ill. 2002) (noting that neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee). And given the mandatory 10 year sentences Defendant is facing, combined with the amount of drugs being attributed to him, Defendant has a strong motive to flee. *United States v. Iverson,* 2014 WL 5819815, at *4 (W.D.N.Y. Nov. 10, 2014) (Arcara, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment

upon conviction is likely to be long ... a defendant has stronger motives to flee.") (internal citation omitted); *see e.g., United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015); *United States v. English*, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release and a mandatory sentence that incentivized fleeing); *United States v. Dodge*, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

"While fentanyl itself poses an extreme danger and is an important consideration, cases may arise where detention is *not* warranted on fentanyl-related charges subject to the presumption when considering the specific circumstances of the alleged offense, the defendant, and the evidence." *Coley*, 2023 WL 3271146, at *5. This, however, is not one of those cases. The Court cannot ignore the evidence proffered by the government regarding the amount of fentanyl that was found in the Crown Royal bag, attributable to Defendant, or the call between Defendant and Chamberlain callously enjoying the fact their product was in high demand on the streets. Thus, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not be a risk of non-appearance or pose a danger to the community.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded a reasonable opportunity to consult with counsel in private while in custody.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 19th day of December, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**